## CAREY *v.* THE CINCINNATI AND CHICAGO RAILROAD COMPANY *et al.*

The courts of one State, do not take judicial notice of the statutes of another State.

Where a party relies upon the statutes of a foreign state, he must plead them as he would any other facts; and it will not do to refer to such statutes by their title and date of approval; nor by stating what, in the opinion and judgment of the pleader, are their general provisions and requirements.

Where a bill in chancery alleges that a corporation itself, made false representations, it will not be presumed that those through whom the corporation may have acted, exceeded their authority, or made the representations without sufficient authority.

In a proceeding in chancery against a corporation, to set aside conveyances of real estate, alleged to have been obtained by the fraud and misrepresentation of the company, the fact, whether the company ever had any corporate existence, so as to enable it, in its corporate name, to take and hold property, may be inquired into.

If a company, professing a corporate existence which it does not possess, acquires for a particular purpose, in its corporate name, the property of another, and conveys the same, the sufficiency of such conveyance or transfer, may be inquired into collaterally.

Where a corporation, by its own acts, has ceased to exist, or where it has suffered acts, which destroy its existence, it is as fully and entirely dissolved, as if declared so to be by the sentence of a competent court.

Where a company has ceased to have a corporate existence, as a legal and necessary consequence of certain acts; and a party claims that he had been injured thereby, or that certain benefits result to him, in consequence of such dissolution, he may, by averring these facts, have his remedy, and need not, in the first instance, institute a proceeding, and have it declared, that the existence of the corporation had terminated.

The fact, that the existence of a corporation has ceased, being established, the corporation becomes dissolved, and may be so treated.

While a corporation cannot relieve itself from responsibility to those to whom it may be indebted, by becoming merged into a new organization, it may, by the act of merger, become so situated, as to be estopped from claiming that it remains undissolved.

Where a corporation, organized under the laws of one state, has had an existence, and has done no act which *per se* works a forfeiture or dissolution, or has not surrendered its franchises, the courts of another state, cannot inquire, either in a direct or collateral proceeding, whether there have been such irregularities in its proceedings, or such failure to comply with the terms of its charter, or the laws under which it was organized, as to work a forfeiture of its existence.

In such a case, a judgment of forfeiture must first be obtained in the state' conferring or granting the corporate powers.

Where a conveyance of real estate is obtained by fraud, in equity, as between the parties thereto, it is treated as if it had never been made.

Though the grantor may have parted with the legal title, equity treats the property as belonging to him; and where the grantee is a corporation, the property, under such circumstances, does not become a part of the assets of the company; nor are the grantor's right thereto, dependent upon the ability of the corporation to meet its liabilities.

A fraudulent vendee, in equity, will be held to be a mere trustee for the vendor, who has been deluded and cheated.

Where in a proceeding in chancery, to set aside certain conveyances of real estate, the petition alleged, that in February, 1854, the complainant sold and conveyed to the Cincinnati, New Castle and Michigan railroad company, the lands in question; that he received therefor, certificates of one hundred and twenty shares of the stock of said company, of the nominal value of $50 each; that previously to, and at the time of the sale of the lands, the company represented to him, that it was duly incorporated under the laws of Indiana, for the purpose of constructing a railroad from New Castle, Indiana, through certain counties named, to the line of the States of Indiana and Michigan, in a direction leading to the mouth of Grand river, in the latter State; that the company was duly organized under the general act of Indiana, for the incorporation of railway companies, approved May 11, 1852; that the company was in good standing, and was able to prosecute its purpose with vigor; that many hands were at work upon it; that the stock of the company was selling at par, and could be excharged for goods at Cincinnati, at par; that complainant confided in these representations of the company, and in view of them, was induced to make the conveyance; and that said representations were false and fraudulent, and that the complainant was deceived thereby; and where the representations alleged were negatived in the petition, and the complainant avers, that the certificates of stock received by him, are brought into court, to be disposed of under the order of the court; *Held*, 1. That the charge of fraud was sufficiently alleged in the petition; 2. That the bill was not so founded upon the certificates of stock, as to make the failure to annex them to the petition, as an exhibit, a ground of demurrer, under section 1750 of the Code.

*Appeal from the Jones District Court.*

SATURDAY, DECEMBER 12.

This was a bill in equity, to recover certain real estate in Jones county, or to set aside the conveyances thereof, and is placed upon the grounds:

*First*, That the conveyance from the complainant was obtained by fraud and misrepresentation. *Second*, That

the conveyance was made in trust, the objects of which have not been pursued, but, on the contrary, have been abandoned. *Third*, That the railway company, to which the real estate was conveyed, has become dissolved, and has ceased to exist, and that, therefore, the property reverts to the grantor.

The allegations of the bill seeking relief are, in substance, the following: That in February, 1854, the complainant sold and conveyed to the Cincinnati, New Castle and Michigan Railroad Company the lands in question, situate in Jones county, Iowa; that he received therefor, certificates of one hundred and twenty shares of the capital stock of said company, of the nominal value of fifty dollars each; that previously to, and at the time of, the sale of the lands to the company, they represented to him that they were duly incorporated under the laws of Indiana, for the purpose of constructing a railroad from New Castle, in the county of Henry, State of Indiana, through certain counties named, to the line of the States of Indiana and Michigan, in a direction leading to the mouth of Grand river, in the latter State; that the company was duly organized, under the general act of Indiana, for the incorporation of railway companies, approved May 11, 1852; that the company was in good standing, and was able to prosecute its purpose with vigor; that many hands were at work upon it; and that the stock of the company was selling at par, and could be exchanged for goods at Cincinnati, at par.

The bill further alleges that, by the law of Indiana, the persons thus organizing to construct a railway, must file their articles of association in the office of the secretary of State, which must show that a certain amount had been subscribed—the name of the corporation—the amount of capital stock—the number of shares—the number of directors, and their names—the names of the places from; and to, which the road is to be constructed—the counties through which it is to pass—and its length, as near as may be. The bill then avers that the lands were conveyed to

Carey v. The Cincinnati and Chicago Railroad Company et al.

the company in trust, for the purpose of aiding in the construction of said railroad; that the company never was incorporated under the act; that the amount required by law was never, in good faith, subscribed; that the company never filed their articles of incorporation in the office of the secretary, and that it never was duly incorporated; that it was not in good standing and condition; that they had not, at work upon the road, the number of hands which was represented; and that the stock of the company was valueless at the time of the sale; that he confided in these representations of the company, and, in view of them, was induced to make the conveyance, but that such representations were false and fraudulent, and deceived the petitioner; and that the conveyance was, therefore, void—and he alleges that the certificates of stock received by him, are brought into court, to be disposed of under the order of the court; and that the company have not constructed the road, and are not engaged in so doing, but have abandoned it, and have not appropriated the land to this object. The petition further states, that the act makes certain provision for an annual meeting for the election of directors, but that they failed to elect, as required; that there has never been an election under the pretended organization; that the company has ceased to act as a corporation, and has become dissolved, by its own acts and omissions; that its office has been closed for more than two years; that there are no officers; that the seal has been sent out of the State of Indiana; and that, at the time of the dissolution, the company had not conveyed away the said land, and thereupon the title thereto reverted to him.

The petition then states that the Cincinnati and Chicago Railroad Company, claim that the title to the lands was conveyed to them, by the consolidation of the Cincinnati, New Castle, and Michigan Railroad Company, with the Cincinnati, Cambridge and Chicago short line Railway Company, and the petition avers, that the above first named company, have attempted to cast a cloud over the title of petitioner, by certain resolutions recorded in the

offce of the recorder of deeds in Jones county, a copy of which is attached and made a part of the bill. These resolutions are certain ones adopted at a meeting of the stockholders of the Cincinnati, New Castle and Michigan Railroad Company, on the one part, and at a meeting of the stockholders of the Cincinnati, Cambridge and Chicago short line Railway Company, on the other part, by which those two companies, voted to unite and consolidate themselves into one, under the name of the Cincinnati and Chicago Railroad Company; that the stockholders in each, should remain stockholders in the consolidated company, and transfering all property to the new organization; and that all subscriptions, assets and property on hand, should be appropriated exclusively to the construction of the particular division upon which the same was subscribed, and assuming the debts and liabilities of the two consolidated bodies. The petition proceeds to aver, that this meeting was not called and held, in conformity with the requirements of the statute; that a majority of the stockholders, were not represented; that, by the law under which they pretended to act, they had no right to consolidate with another company, and that such attempt was unauthorized and void.

The petition finally states, that the Cincinnati and Chicago company attempted to convey the said lands to one Robert G. Hedrick, by a deed of conveyance, which he claims is a nullity; that Hedrick attempted to convey to Elias A. Miller, but that no title passed; and that Miller attempted to convey the land, or a part thereeof, to Simon Graul, but that no title passed—copies of all which deeds, are made part of the petition; and he alleges that the Cincinnati and Chicago Railroad Company, Hedrick, Miller and Graul, had full notice of the outstanding equity of petitioner, and of his title to the estate, prior to the time when they pretended to purchase, and of the several frauds committed by the Cincinnati, New Castle and Michigan Railroad Company, on him. He then prays that the Cincinnati and Chicago Railroad Company, Hedrick,

Carey v. The Cincinnati and Chicago Railroad Company et al.

Miller and Graul, may be made parties to his petition, and be compelled to answer, but not under oath; that on final hearing, the title may be decreed to be in him, and he be quieted therein; and that the conveyances between the other and foregoing parties, be cancelled, and for such further relief, &c.

To this petition, the defendants, Miller and Graul, appear, and demur upon the following grounds:

1. That the plaintiff makes no case calling for relief in equity.

2. That it shows no legal proceedings by which the existence of the corporation has been terminated, nor by which it has been declared not to exist.

3. That the bill alleges irregularities in the creation and existence of a corporation, under the laws of Indiana, but does not show any legal proceedings, declaring the charter forfeited; and this court cannot inquire into them, in this collateral proceeding.

4. The bill alleges that the Cincinnati, New Castle and Michigan Railway Company, had no corporate existence, and yet makes an exhibit of, and refers to, the proceedings of the company, as a corporation *de facto*.

5. The complainant negotiated with said body, as a corporation *de facto*, and sets forth a contract with it; and it is not consistent, in this proceeding, to allege that it had no corporate existence.

6. The bill refers to certain certificates of stock, and makes them part of the bill, and no certificates of stock, nor copies thereof, are attached to the bill. This demurrer was sustained, and the bill dismissed. Complainant appeals.

*Henry & Foos*, for the appellant, cited *Slee* v. *Bloom*, 19 Johns., 474; *Briggs* v. *Penni man*, 8 Cow., 390; *The State* v. *The Real Estate Bank*, 5 Ark., 595; Angell & Ames on Corp ., 880; 2 Kent Com. 358; *Phillips et al* v. *Wickham et al*, 1 Paige, 596; 1 Black. Com. 484; Angell & Ames on Corp. 195; *The People* v. *Mauran*, 5 Denio,

Carey v. The Cincinnati and Chicago Railroad Company et al.

389; *Bingham* v. *Weider et ux*, 1 Const. 509; Code, chap. 79; *Merritt et al* v. *Lambert*, 1 Hoff. Ch. 166; 2 Story's Equity, sec. 1262.

*Whitaker & Grant*, for the appellee, relied upon the following: Angell on Corp., 237; 1 Story's Equity, 230, note 3; Grant on Corp. 308; Angell on Corp. 655; 2 Kent Com., 364; *Peoria and Oquaka R. R. Co.* v. *Etting*, 17 Ill., 429; Code, sec. 2169.

WRIGHT, C. J.—Without considering in their order, the several causes of demurrer to complainant's bill, we shall present generally the views which we entertain of the cause.

The general reference in the bill, to the laws of the state of Indiana, is not sufficient. If complainant would rely upon the fact, that the Cincinnati, New Castle and Michigan Railroad Company, had failed to organize according to the laws of that state; or that it had conducted in such a manner, as that under, and by virtue of those laws, it had forfeited its charter, or ceased to have a corporate existence—the particular statute or statutes relied upon, should be set out, that the courts of this state, may be able to judge of their provisions, and of the duties thereunder devolving upon this company. Our courts do not take judicial notice of the statutes of another state. And if a party relies upon such statutes, he must set them out—plead them as he does any other fact, and it will not do to refer to them by their title, and date of approval, nor by stating what in the opinion and judgment of the pleader, are their general provisions and requirements. *Bean* v. *Briggs & Felthouser*, 4 Iowa, 494 and cases there cited; *Walker et al* v. *Maxwell*, 1 Mass., 103; *Legg* v. *Legg*, 8 Ib. 99; *Collett* v. *Keith*, 2 East, 261.

We next consider the charge of fraud, as contained in the bill. This charge relates to certain representations made by the company receiving the deed, which are alleged to have been false and fraudulent, and known to be

so, at the time, by the party making them, which false representations were relied upon by complainant, and relying upon which, he was induced to make the conveyance. These averments are urged by respondents, to be insufficient to sustain the charge of fraud; in the first place, because corporations, like natural bodies, are only bound by the acts of their agents, done within the scope of their authority; and it is not shown that the persons making the representations, acted for, or under, the authority of the corporation. This objection is evidently based upon a misapprehension of the averments of the bill. The bill avers that these misrepresentations' were made, and the frauds practiced, by the company, and there is nothing tending to show that it acted by agents. It may be, and' is probably true, that the corporation did act through its officers or agents, but when it is alleged, as in this case, that the company itself made the false representations, we will not presume that those through whom it may have acted, exceeded their authority, or made the representations ·without sufficient authority.

Again, it is urged, that some of. the representations alleged to have been fraudulent, were of facts not exclusively within the knowledge of the company, and that it is not shown that there was such suggestion of falsehood, or suppression of truth, as should have misled complainant, or prevented him from ascertaining the truth in the premises. To this, it may be said, that there are some of the circumstances which would seem to have been equally within the knowledge of both parties, and no reason is, perhaps, disclosed, why complainant did or should have been misled, or justly induced to repose upon the statements made; and yet, we cannot say that this is true, as to all such representations. Complainant states, for instance, that the company represented that it was in good standing, and able to prosecute its purposes with vigor—that he relied upon these statements—and in view of these, and various other representations which are set out, he was induced to make the conveyance; that they were false

and fraudulent; that he was deceived thereby; and that the road has not been constructed, but, on the contrary, has been abandoned. It would not do to say, in the face of these allegations, that the company had no advantage of complainant, nor that he had the same means of knowledge, on these subjects, as those possessed by the corporation. It is true that he may have had, or might, by the use of proper diligence, have had this knowledge, but that depends upon the actual circumstances of the case, and cannot be said to be manifest from the face of the bill. And the same remark applies to most of the averments on this subject. We think the charge of fraud is sufficiently made, taking the bill as true, and that this cause of demurrer is not well taken. Story's Eq. Jur., 191; *Laidlow* v. *Organ*, 2 Wheat., 179.

It is next objected, that the complainant does not attach to his petition, a copy of the certificates of stock issued to him. He avers that he brings them into court, and offers to deliver them up. These certificates are not the instruments in writing upon which the complainant's bill is founded, within the meaning of section 1750 of the Code, so far as to make the failure to annex them to the pleading as an exhibit, a cause of demurrer. If he brings them into court, and offers to surrender the same, it is sufficient.

Another ground of demurrer, presents various questions relating to the power of the courts of this State, to inquire into the existence and acts of a corporation under the laws of Indiana, and particularly the power to determine that such corporation has forfeited its charter, until it is dissolved or terminated by the sentence or decree of the courts of the State where organized. In the first place, we may remark, that if this company never had any corporate existence, so as to enable it, in its corporate name, to take and hold property, as is averred in this bill, we see no reason why that fact may not be inquired into in a collateral proceeding like the one before us. If it never had such existence, then we can conceive of no direct proceeding which could test that question. And so,

if professing such existence, it acquires, for a particular purpose, in its corporate name, the property of another, then, as it had no power, as such, to take, neither could it transfer, and the sufficiency of such transfer may be inquired into collaterally. And, again, if it be true, as charged, that said corporation has, by its own acts, ceased to exist; or that it has suffered acts which destroys its end, it is as fully and entirely dissolved, as if declared so to be by the sentence of a competent court. If, as a legal and necessary consequence of certain acts, it has ceased to have a corporate existence, and any individual should claim that he thereby has been injured, or that certain benefits result to him, he may, by averring these facts, have his remedy, and need not, in the first instance, institute a proceeding and have it declared, that its existence has ceased. This, of course, may involve an inquiry into the character of the acts suffered—the burthen being upon the party alleging them—but the fact that its existence has ceased, being established, it becomes dissolved, and may be so treated. See *Philips* v. *Wickham*, 1 Paige, 595, and cases there cited; *Briggs* v. *Penniman*, 8 Cow., 387; *Canal Co.* v. *Railroad Co.*, 4 Gill. & Johns., 1. And, therefore, if, as stated in the bill, the original company has lost its identity and existence, by becoming merged into the new organization, then it may be treated as at an end, for it is in no position to necessarily require a judicial inquiry to determine its existence. It is true, that it may not, and cannot, thus relieve itself, or perhaps the corporators individually, from responsibility to those to whom it or they may be indebted, but it may, by the act, become so situated as to be estopped from claiming that it remains undissolved. *Slee* v. *Bloom*, 19 Johns., 456; 2 Kyd on Corp., 467; *King* v. *Passmore*, 3 Term R., 244; 1 Rolle Abr., 514; 4 Com. Dig., 273.

If, on the other hand, it had an existence, and has suffered no act which, *per se*, works a forfeiture or dissolution; if the inquiry is, whether there have been such irregularities in its proceedings, or such failure to comply

with the terms of its charter, or the law under which it was organized, as to work a forfeiture — or if it has not surrendered its franchises, — then we do not think that the courts of this state can determine the question, either in a direct or collateral proceeding. A judgment of forfeiture must first be obtained, in a state conferring or granting the corporate powers. *Canal Co.* v. *Railroad Co.*, 1 Gill & Johns. 1; Angell & Ames on Corp., sec 777; *Trustees of Vernon* v. *Hills*, 6 Cowen, 23; *The People* v. *The Society*, &c., 1 Paine, 653.

Again: it is argued that if dissolved, the assets of the company must first go to the payment of its debts, and the residue only can revert to the donors or stockholders. Grant this, and yet, in our opinion, the rule can have no application to the present case. If the conveyance was obtained by fraud, then, in equity, it is to be treated, as between the parties thereto, as if never made. The grantor may have parted with the legal title, but equity treats the property as belonging to him, and it cannot, under such circumstances, be said that it becomes part of the assets of the company, or that the grantor's right thereto, is dependent upon the ability of the company to meet its liabilities. A fraudulent purchaser will be held as a mere trustee for the vendor, who may have been deluded and cheated. Story's Equity Jur., sec. 1265, 191.

What may be the effect of the consolidation of the two companies referred to, upon the rights of the complainant —how far this was permissable under the law governing the organizations—how far, as one of the stockholders, he may be bound thereby,—it is not necessary that we should now determine; nor, indeed, could we, with safety to the rights of the parties, determine the questions, until the laws referred to are properly before us. If it be true, however, as averred, that the consolidation could not legally take place, or was not, in fact, consummated, then it seems to us that the company receiving the deed would become a necessary party. The charges of fraud relate alone to that organization, and if its corporate existence has not become

merged into that of the new company, it would seem to be
necessary that, before it should be concluded by any de-
cree, it should have its day in court, and that, strictly, no
proper decree could be rendered in the premises.

We conclude that complainant's bill, taken as true, is
sufficient to entitle him to relief, and that the court erred
in dismissing the same for want of equity.

Decree reversed.