## BARBER v. LYON *et al.*

1. CONVEYANCE OBTAINED BY FRAUD. A conveyance obtained by fraud is treated in equity as never made.

2. SAME: TRUSTEE. A purchaser who acquires a title by fraud is regarded as a trustee for the equitable owner, and a court of equity will compel him to transfer a title thus acquired to such owner, but this remedy will not be enforced to the injury of third parties, who claim adversely to the party committing the fraud.

3. SAME: SUBROGATION. On the 26th of April, 1855, B. and W. purchased of L. certain lands and executed their notes for the purchase-money, and a mortgage to secure the payment of the same, which mortgage was never recorded; the payee of these notes afterwards transferred them to one E.; on the 12th February, 1856, B. conveyed to W. his interest in the premises, executing a deed of general warranty against incumbrances, and taking a mortgage to secure the purchase-money; and on the 19th of June, 1858, W. borrowed money of L., and secured the payment of

the same by mortgage on the same premises, representing that the money would be applied in satisfaction of the mortgage to B., the only incumbrance of record on the premises, which representations induced L. to advance the money; the money thus received was in fact paid to E., in satisfaction of the mortgage executed by B. and W. to L. In a proceeding by B. to foreclose the mortgage, executed by W., it was held that L. could not be subrogated to the rights of E. in the mortgage executed by B. and W. to L., to the satisfaction of which the moneys obtained from him by the fraudulent representations of W. were applied.

*Appeal from Johnson District Court.*

TUESDAY, JUNE 9.

BILL to foreclose a mortgage, given by John A. and Wm. N. Whitlock to complainant, upon certain real estate, of date February 12, 1856. Lyon is a subsequent incumbrancer, by mortgage of June 19th, 1859. The cause was submitted to a referee appointed by the Court, upon the issues made by the bill, answers thereto, cross-bill of Lyon and amended cross-bill, and answers thereto, who reported the following facts: That there was due complainant on his mortgage, $3,609.58; that on the 26th of April, 1855, complainant and the Whitlocks purchased of one Stover the land covered by the same liens, and for a balance of the purchase money, executed to said Stover their note and a mortgage on the same lands, which mortgage was never recorded. Stover afterwards sold and transferred this note and mortgage to one Evans. On the 12th of Februray, 1856, complainant conveyed to the Whitlocks his interest, being one undivided third, in the lands thus bought of Stover, and covered by the mortgage of April 26th, 1855, executing a deed of general warranty against incumbrances, &c. At the time that Lyon took his mortgage he was deceived and defrauded by William N. Whitlock, who represented and made him believe that there was but one lien upon the premises, to wit: the one to complainant, and he loaned his money with the understanding, expectation and belief that it would

be applied to the satisfaction of complainant's debt, the only incumbrance of record on the premises. Whitlock represented himself as acting for complainant, and that the money would be at once applied on his mortgage. The money thus received from Lyon was, in fact, paid to Evans, the holder of the Stover mortgage, and in satisfaction of it. Barber was not in any way a party in fact to the transaction or representations by which the loan was made of Lyon and paid over to Evans. Lyon foreclosed his mortgage in 1859, but to that proceeding Barber was not a party. Under a special execution issued thereon, Lyon bought the premises in 1860, believing, until after that time, that Barber had been paid with the money borrowed of him by Whitlock. From the decree foreclosing complainant's mortgage and giving it priority over all other liens, Lyon appeals.

*Edmonds & Ransom* for the appellee.

I. Whitlock, having obtained the money of Lyon by fraud, made himself a trustee, and Lyon may follow and reclaim it, or its representation, in whatever shape it may be found, as against the trustee, or any one but an innocent purchaser for value. Story's Eq. Jur., §§ 1255, 1258, 1265 ; *Carey* v. *The Cincinnati and Chicago Railroad Company*, 5 Iowa, 368 ; *Phelan* v. *Clark*, 19 Conn., 421 ; *Rogers* v. *Brant*, 5 Gilm., 582 ; *Currens* v. *Hart*, Hardin, 37 ; *Balgney* v. *Hamilton*, 1 Amb., 413 ; *Lane* v. *Dughton*, Id., 409 ; *Wallace* v. *Duffield*, 2 S. & R., 521 ; *Le Breton* v. *Pierce*, 2 Allen (Mass.), 8 ; *Lloyd* v. *Brewster*, 4 Paige Ch., 537 ; *Root* v. *French*, 13 Wend., 570 ; *Bank of America* v. *Pollock*, 4 Ed. Ch., 215 ; *Thompson* v. *Perkins*, 3 Mason, 232 ; *Moffit* v. *McDonald*, 11 Humph., 457 ; *Heath* v. *West*, 6 Foster, 191 ; *Carroll* v. *Rice*, Walker Ch., 373 ; *Cherry* v. *Newsom*, 3 Yerg., 369 ; Hilliard Sales, 269 ; 2 Par. Cont., 277, notes *q.* and *r.*

II. A court of equity may, after the discharge of a bond and mortgage, substitute the person who takes it up, in the place of the mortgagee, and keep it alive. *Garwood* v. *Eldridge*, 1 Green (N. J.), 151.

*Fairall & Boal* for the appellee, reviewed the propositions and authorities cited by counsel for the appellant; and contended 'that Lyon cannot be subrogated to the rights of Evans, citing *Banta* v. *Gasmo*, 1 Sand. Ch., 383; *James* v. *Morey*, 6 John. Ch., 417; *S. C.*, 2 Cow., 246; *Murray* v. *Catlett*, 4 G. Greene, 111; *Marvin* v. *Vedder*, 5 Cow., 671.

WRIGHT, J.—Appellant does not claim that his mortgage of June, 1857, is entitled to precedence over complainant's, which is of date February 12th, 1856. The substance of his position is, that he was induced to part with his money by the fraudulent representations of Whitlock, that it would be applied in satisfaction of the only record lien upon the land, to wit: the mortgage to Barber, that it was not thus applied, but that it was paid to Evans to satisfy a mortgage executed by complainant, as well as the Whitlocks, which mortgage was given to secure their joint and several debt, and that appellant should be subrogated to all the rights of Evans, and stand in the same position as he would if the mortgage had been assigned or transferred to him in consideration of the money thus advanced instead of satisfied and canceled. Or the argument may be stated thus: that as Whitlock obtained Lyon's money by deceit and fraud, he made himself a trustee of that money for Lyon, and whatever disposition he made of that fund, a Court of Equity will decree it to inure to Lyon's benefit; that he made himself such trustee by his own wrong, and that Lyon might, therefore, follow the fund or that which represents it, wherever found, as

against the trustee, and all other persons except innocent purchasers for value.

A rule most equitable and just is, that if a conveyance is obtained by fraud, it is treated in a court of conscience as if never made. The fraudulent purchaser is treated as a mere trustee for the vendor who has been cheated and made a victim of the fraud. (*Carey* v. *The Cincinnati and Chicago Railroad Company*, 5 Iowa, 357; Story's Equity, § 1265.) Equity affords a more ample relief than is attainable at law, by compelling a party who has acquired an apparent right as a consequence of his fraud and false representations, to transfer it to the party equitably entitled to it. (*Rogers* v. *Bratt*, 5 Gilm., 582.) And the principle applies where money held in trust for another is wrongfully converted. Analogous to this is the rule that the abuse of a trust can confer no right upon the party guilty of the misconduct. Hence it was held in *The Bank of America* v. *Pollock*, 4 Edwards' Ch., 215, where a clerk fraudulently obtained money from the bank, with which he bought stock, and transferred the same to his sister, that the bank could follow the money and have a transfer of the stock to itself.

All these well-settled rules, and the cases based thereon, are applicable primarily to the immediate parties to the fraud. They are also applicable to those who claim in privity with the party abusing the trust or practising the fraud. So they are to a party who takes the fund, or that which represents it, with a knowledge of the fraud, or without paying a consideration, or perhaps in payment of a precedent debt. They are without weight, however, as against innocent third persons, who claim not in privity with, but adversely to those practising the fraud, who have been guilty of no wrong, have received none of the money, but in good faith have rested upon a security valid when given, and which they have in no manner released nor

VOL. XV.—6

surrendered. And, therefore, while Lyon might treat Whitlock as a trustee, it by no means follows that he could follow the money borrowed in to the lands, to the prejudice of complainant, who had no knowledge whatever of the alleged fraud.

Barber's liability continued to Stover, or his assignee Evans, after his sale to the Whitlocks in 1856. That is to say, the holder of the note and mortgage could look to Barber as well as the other parties for his pay. As between the mortgagors, however, it does not appear what the arrangement was for the payment of that debt. Whether the Whitlocks after their purchase from Barber, and in part consideration for the conveyance of his one-third interest to them, assumed the payment of the Stover mortgage, or whether he was still to pay his proportion of it, is not shown. An argument drawn from the fact that he in his deed covenants against incumbrances can avail but little, from the fact that the mortgage from the Whitlocks to him, covering all the land contains a like covenant. And when it is borne in mind that two-thirds of the land covered by the Stover mortgage belonged to those purchasing of Barber; that his covenant did not cover that, and that as between them he was in no event liable to pay more than one-third of that mortgage, there would be but slight ground for claiming from the covenants in the deed that complainant had assumed this debt, or that his liability as between him and the Whitlocks, still continued. If we add the consideration, that Whitlocks alone borrowed the money of Lyon to pay Evans; that they admit that they were alone liable for it and had no claim upon Barber, and that Lyon was certainly negligent in parting with his money without first seeing to the satisfaction of a mortgage apparently very much larger than the sum loaned, but which he claims was to be satisfied from such loans, we say such considerations would seem to show that it was not Barber who

Barber v. Lyon.

received the benefit of the money borrowed of Lyon, but the Whitlocks, and that they should sustain the burden.

This is not a case where the parties have equal rights and equal interests, for there is nothing to show that Barber is equitably or legally bound to contribute towards the payment of the Lyon debt. Nor has Lyon any right to be subrogated or substituted to the rights of Evans. He loaned his money to Whitlock and not to Evans. There was no intention on his part, either expressed or fairly to be implied, to keep the mortgage in existence, to purchase such security and hold it. The mortgage was paid off and canceled. And we are aware of no principle which would justify the Court to revive or bring to life this obligation which has been taken up and canceled by the consent of all the parties to it. Adding the thought that Lyon was not compelled to advance this money to pay Whitlock's debt to protect his own right; that he did not stand in the relation of surety, and in the absence of some agreement, we do not see how a Court of Equity could substitute him in the place of Evans to the prejudice of Barber's rights. There being no agreement, it seems to us that it would be inequitable to keep such security alive. It is simply a case where the debt has been extinguished and absolutely satisfied with the money advanced, and which is now sought to be revived against a party who has acted in good faith and without knowledge of the alleged fraud.

To do this we think would be against good conscience and without precedent.

Affirmed.