[4] The following special charge was requested and refused:

"I instruct you that if you shall believe from the evidence, beyond a reasonable doubt, that the defendant shot and killed the deceased, yet if you shall further believe that at the time he did so he believed, or it appeared to him, that his companion, Son Douglass, was in danger of death or serious bodily injury on account of an attack then being made or about to be made by the deceased or his companion, if any, that you will acquit him; or if upon this point you have a reasonable doubt you will acquit him."

Appellant testified that at the time he fired he was acting in his own self-defense, and this issue was submitted; but if from all the evidence the issue as to the defense of Son Douglass was raised, it should also have been submitted. See Steen v. State, 88 Tex. Cr. R. 257, 225 S. W. 529; and authorities cited in that opinion; also, Ward v. State, 96 Tex. Cr. R. 278, 257 S. W. 536; Thompson v. State, 96 Tex. Cr. R. 87, 256 S. W. 279.

[5-9] In our analysis of the facts we have been unable to disassociate the acts of appellant from those of Douglass. This same trouble must have confronted the jury. If Douglass killed Gatlin not in self-defense, and appellant acted with him as a principal, he would be guilty of some grade of homicide regardless of whether his shot struck Gatlin. But what were appellant's rights if Douglass was acting in self-defense. In determining whether the special charge last above quoted should have been given, it is necessary to look at the case from the defensive evidence. Appellant says that nei-

ther he nor Douglass had their pistols drawn when Douglass made an inquiry about who had done the shooting near Johnson's house, to which inquiry Gatlin replied, "What in the hell is it to you?" and immediately commenced to draw his pistol. If this be true, Douglass and appellant being together, either had a right to meet the offensive act of Gatlin by drawing his own gun in self-defense. If Gatlin and Douglass commenced to fire at each other, Douglass acting on the defensive, appellant would have the same right to defend Douglass as Douglass himself would have. Upon a more careful analysis of the testimony, we are led to believe this issue was in the case. There was an entire omission from the charge of any reference to this subject. No specific exception because of the omission was presented, but the special charge requested was sufficient to call the court's attention to the omission. See Boaz v. State, 89 Tex. Cr. R. 515, 231 S. W. 790; Parker v. State (No. 7255 Tex. Cr. App.) 261 S. W. 782, not yet [officially] reported.

For the reasons given the rehearing is granted, the judgment of affirmance is set aside, and the judgment is now reversed and the cause remanded.

---

COX v. TYLER COTTON OIL CO. et al.*
(No. 3017.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 17, 1925. Rehearing Denied Feb. 26, 1925.)

1. **Corporations** &⪾547(3)—**Assets of insolvent corporation, held by directors in trust for creditors, held not subject to levy of attachment at instance of corporation creditor.**

Where all property of insolvent corporation was given to directors in trust for creditors, such property was not thereafter subject to attachment at instance of a creditor, and that stockholders did not proceed in manner provided by Rev. St. art. 1205, did not render proceedings void, and amendment of article 1206, by Acts 2d Called Sess. 1919, c. 56, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 1206), does not affect this holding.

2. **Corporations** &⪾546—**Stockholders of insolvent corporation can create fund to pay debts due independent of statute.**

The stockholders of an insolvent corporation, which has ceased to do business, can, independent of statute, voluntarily pass property, so as to create fund to pay debts due; it being an equitable doctrine, independent of statute.

3. **Corporations** &⪾547(3)—**Directors of insolvent corporation, holding its property in trust for creditors, could defend against attempt to levy attachment on such property.**

Directors of insolvent corporation, who, pursuant to resolution adopted at stockholders'

meeting, were holding property of corporation in trust for benefit of creditors, could defend against attempt by creditor to levy attachment on such property and foreclose attachment lien.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Suit by C. A. Cox, guardian of the estate of J. E. Lindsey, a minor, against the Tyler Cotton Oil Company and others. From an insufficient judgment in his favor, plaintiff appeals. Affirmed.

The suit was brought by the appellant, guardian of the estate of J. E. Lindsey, a minor, against the Tyler Cotton Oil Company, a private corporation, to recover on a promissory note due and owing to the minor by the said company. At the same time of the filing of the suit, August 1, 1924, the appellant caused to be issued and levied a writ of attachment. The writ of attachment was levied on certain real estate of the company, which, as appears, was "all of its property, including defendant company's plant, and its oil mill and all other buildings and machinery are situated thereon."

The Tyler Cotton Oil Company answered by a general denial, and specially set up the particular facts that it was insolvent and not a going concern, and had ceased to do business, and that on July 31, 1924, prior to the institution of the plaintiff's suit and the levy of the writ of attachment, the stockholders of the defendant company held a meeting, all of the stockholders being present, and by a unanimous vote passed a resolution instructing and authorizing the board of directors to take over and sell all of the property of the company, both real and personal, and apply the proceeds derived from the sale to payment of the debts of the company and liquidate the corporation; that the board of directors of the corporation, at a meeting held on July 31, 1924, at which all the directors were present, unanimously passed a resolution approving the action of the stockholders, and that the directors actually took over the property and ordered its sale to pay its debts; that the company was indebted in an amount in excess of $165,000, and that all its assets, including its plant and real property, did not exceed the value of $50,000; and that to permit the plaintiff to foreclose the attachment lien upon the premises levied on would be to enable the plaintiff to collect his debt to the detriment of the other creditors, who are entitled to have all the assets of the defendant equally and ratably distributed among them. A copy of the stockholders' resolution was attached to the answer.

The board of directors intervened in the suit, alleging that they were—

"the directors, and all of the directors, of the Tyler Cotton Oil Company, and that they, on

July 31, 1924, as the directors of the defendant company, had in their possession, and were holding in trust for the use and benefit of all the creditors of the Tyler Cotton Oil Company, the premises that were levied upon by the sheriff of Smith county in virtue of the writ of attachment sued out by the plaintiff."

Then follow substantially the same allegations of fact set out by the Tyler Cotton Oil Company. A copy of the stockholders' and directors' resolutions is attached to the interveners' petition.

The plaintiff in the case filed a supplemental petition of denial and the want of authority on the part of the guardian to bind the minor in a stockholders' meeting, which it was alleged he participated in. The case was tried before the court without a jury on an agreed statement of facts, and the court rendered judgment in favor of the plaintiff against the Tyler Cotton Oil Company for the amount of the debt sued for, with interest and the attorney's fees provided for in the note, but denied the plaintiff a foreclosure of the attachment lien on the property that had been levied upon, as against the defendant as well as the interveners.

It is admitted that the Tyler Cotton Oil Company was indebted to J. E. Lindsey in the sum sued for. It was agreed that the Tyler Cotton Oil Company was a private corporation, duly incorporated under the laws of Texas, with domicile and place of business in Tyler, Tex., and was engaged in the manufacture of cotton seed oil and kindred products. Prior to June, 1924, the company became insolvent, owing to various persons, firms, and corporations a sum aggregating $166,544.74. The total assets of the company, including the mill and machinery and real estate, was of the value of not exceeding $50,000. All of the creditors were simply creditors, unsecured in the payment of their debts. In June, 1924 (the date not given), the directors of the company "took possession of the plant and all other property, and thereupon discharged all help, except necessary caretakers," and "said corporation thereafter remained insolvent and did not carry on any business whatever." On July 31, 1924, a special meeting of the stockholders was held, being called by the vice president of the company, at the request in writing of three of the stockholders, in keeping with the by-laws of the company. All the stockholders were present at the meeting in person, except two, who were represented by duly appointed proxies. The following resolution was then adopted by the vote of all the stockholders:

"Whereas, the Tyler Cotton Oil Company is now indebted to various firms, persons, and corporations in the amount of $166,544.74, as shown by the books of the corporation, and which indebtedness it is unable to pay at this time; and

"Whereas, it is the opinion of the stockholders, after due consideration and discussion, that it will be to their best interest, as well as to the best interest of the creditors and all parties concerned, that the plant of the corporation in the city of Tyler, and all of its other property, real, personal, and mixed, be sold, and the proceeds applied to the payment of its indebtedness; and that the corporation be liquidated:

"Therefore, be it resolved by the stockholders of the Tyler Cotton Oil Company: '(1) That the board of directors of the Tyler Cotton Oil Company be and they are hereby authorized and instructed to take such action and pass such resolutions as may be necessary to sell said plant and other property. [Then follows authority to sell the real estate at public sale after publication, and authority in the board of directors to sell the personal property at private sale.]"

The resolution concludes with:

"(6) The proceeds derived from the sale of said property shall be applied to the payment of the debts of said Tyler Cotton Oil Company, and the said directors be and they are hereby authorized to provide for the liquidation of said corporation."

Thereupon the directors of the corporation, all being present, held a meeting at the office of the company on July 31, 1924, and unanimously adopted a resolution. The resolution adopted first sets out in full the resolution of the stockholders, then recites:

"Whereas, it is the opinion of the board of directors of Tyler Cotton Oil Company that the action of said stockholders, as expressed in said resolution, is to the best interest of the stockholders and the creditors, as well as all other parties concerned:

"Wherefore, be it resolved by the board of directors of Tyler Cotton Oil Company: (1) That the action of said stockholders, as evidenced by said resolution, be and the same is hereby in all things approved; (2) that the vice president of this company, C. W. Boon, for the purpose of paying its debts and liquidating the corporation, be and he is hereby authorized, empowered, and directed to sell the plant of said Tyler Cotton Oil Company in the city of Tyler, and all the other real estate in the city of Tyler, and all the other real estate of said company, said plant and other real property to be sold ·at public outcry to the highest bidder for cash before the courthouse door in the city of Tyler on August 26, 1924, between the hours of 10 a. m. and 1 p. m. of said day, notice of the sale of the said plant and real property to be given not less than three weeks before the date of said sale, by publication in the Tyler Courier-Times and by notices posted in three public places in Smith county, one notice to be posted on the bulletin board in the courthouse of Smith county; (3) that the vice president of said company be and he is hereby authorized to sell the personal property, including the choses in action, at private sale; (4) any officer or stockholder in said company is hereby authorized to purchase said property, at the sale thereof, provided that he is the highest and best bidder."

The plaintiff's suit was filed and the writ of attachment was sued out and levied on the property on August 1, 1924. It was further agreed that, as a fact:

"(1) No officer of defendant company, nor its directors, intended or purposed to dispose of its property except for the purpose of selling its property to pay its debts, and liquidate the corporation, as set out in the resolutions before or at the time of the levy of the attachment writ in this case.

"(2) That the defendant company has not been dissolved in the manner provided by article 1205, Rev. Civ. Stat.

"(3) That no order was made by the probate court of Smith county authorizing the guardian of the estate of the minor to participate in the said meeting herein referred to."

The court, on the facts, concluded as follows: '

"At the time the attachment was levied upon the property in question, said property was then held and possessed by the directors of the corporation in trust for the benefit of all creditors of the corporation, with the right and authority to hold and dispose of the same for the benefit of all creditors, and the same was not subject to attachment at the instance of the plaintiff, and for that reason a foreclosure of the attachment lien is denied."

The court allowed the plaintiff judgment for the amount of the debt with interest and attorney's fees added, and provided "that the judgment for plaintiff for the indebtedness due by the corporation be paid ratably with other creditors of the corporation, out of the proceeds of the corporate property in the hands of the directors."

Butler, Price & Maynor, of Tyler, for appellant.

Bryan Marsh and Marsh & McIlwain, all of Tyler, for appellees.

LEVY, J. (after stating the facts as above). The two points presented by appellant are: (1) That the property in question was legally subject to attachment at the instance of appellant, and that he was entitled to have a decree of foreclosure of the lien on the property levied on; and (2) that creditors only of the corporation can object to the foreclosure of the attachment lien on the assets.

[1] It is believed that the court did not err in holding that the property was not subject to attachment at the instance of the appellant at the time the attachment writ was levied upon it. At the time when the attachment issued, the Tyler Cotton Oil Company, a private corporation, was admittedly insolvent, owing debts above three times the value of all its assets, real and personal property. In virtue of its indebtedness, and with no ability to further carry on its business in the usual course of trade, the company actually ceased to do business and was

a nongoing concern from and after the early part of June, 1924. At that time and date "the directors of the company took possession of the plant and all other property, and thereupon discharged all help, except necessary caretakers," and "said corporation thereafter remained insolvent and did not carry on any business whatever." In virtue of the situation the stockholders of the company met on July 31, 1924, under a call for the purpose, in keeping with the by-laws of the company, and at the meeting determined upon and consented to and expressly conferred authority upon the directors to make (1) the sale "of the plant of the corporation in the city of Tyler, and all of its other property, real, personal, and mixed," in order to pay "the debts of said Tyler Cotton Oil Company" due and owing; and (2) in order "that the corporation be liquidated." The board of directors of the company met on July 31, 1924, and "in all things approved" or consented to the action of the stockholders, and at the same time ordered a public sale of all the real property of the corporation, to take place on August 26, 1924, and the private sale of all the personal property, "including the choses in action." The sale was ordered by the directors for the purpose of paying "the debts of said Tyler Cotton Oil Company" and in order that "the corporation be liquidated," and at the time of the order of sale the directors were "in possession of the plant and all other property" and had "discharged all help, except necessary caretakers."

Clearly, the stockholders, with consent of the directors, in good faith actually undertook to place the property in a condition of trust, and to have sale made of all the corporate property to pay the debts due, and to bring about the "liquidation" or dissolution of the corporation on account of insolvency, and the inability of the company to continue in business. The company had actually and finally ceased to do business, by consent and authority of the stockholders and the directors. The legal effect attaching to the facts is to fix upon the corporate property a trust primarily for the payment of the corporation debts, share and share alike, which the directors, being in actual possession of the assets, were entitled to enforce. Hardware Co. v. Perry Stove Mfg. Co., 86 Tex. 143, 24 S. W. 16, 22 L. R. A. 802; Wright v. Enless, 12 Tex. Civ. App. 136, 34 S. W. 302. The directors were expressly clothed with authority by the stockholders to make appropriation and transfer of the property, to raise funds to pay the debts; and, as trustees, were actually undertaking to accomplish that purpose by taking possession of and ordering the property to be sold. In such case one creditor cannot secure an advantage over other creditors through means of an attachment. Shoe Co. v. Thompson, 89 Tex. 501,

35 S. W. 473; Rogers v. Lumber Co., 11 Tex. Civ. App. 108, 33 S. W. 312. Especially so in view of the present federal Bankruptcy Laws (U. S. Comp. St. §§ 9585–9656), for the facts present, in effect, a case constituting a general assignment for the benefit of creditors. Moody-Hormann-Boelhauwe v. Clinton Wire Cloth Co., 246 F. 653, 158 C. C. A. 609.

Quoting from the Thompson Case, supra:

"The rights of all creditors in the fund are by law fixed, so soon as the conditions arise out of which the trust relation springs. After the trust attaches, neither the corporation nor the trustees can by any act of theirs affect the rights of the creditors, and we think that it necessarily follows that no creditor can, by any act of diligence on his part, accomplish that which neither the corporation nor trustees could do by agreement with him. In such case the trust attaches in favor of creditors without acceptance by them. If one could secure an advantage * * * over other creditors, the equality of right created by law would be destroyed."

Such proceedings, in virtue of the circumstances, were not void and legally inoperative so as to warrant the levy of an attachment, even though the stockholders did not proceed, as agreed by the parties, to have the corporation "dissolved" according to the method of procedure or "in the manner provided by article 1205, Rev. Civ. Stat." The statute does not forbid or limit or restrict the right of stockholders of an insolvent corporation unable to continue in business to consent to have the corporation cease to do business, and to have the property sold through the agency of the directors, as trustees, to pay creditors.

[2] The stockholders of an insolvent corporation which has "ceased to do business" can, independent of the terms of the statute, voluntarily pass property so as to create a fund to pay the debts due, share and share alike. It is an equitable doctrine independent of statute. In the case of Hardware Co. v. Perry, etc., Co., the court said:

"It has been held in many cases, with much reason, that such condition of affairs will confer on creditors practically the same rights as they would have under technical dissolution. Slee v. Bloom, 19 Johns. 456; Briggs v. Penniman, 8 Cow. 387; Bank v. Ibbotson, 24 Wend. 478; Carey v. Railway Co., 5 Iowa, 357; Moore v. Whitcomb, 48 Mo. 543; Savings Association v. Kellog, 52 Mo. 588."

The appellant especially urges the point that the amendment of article 1206 by the Act of 1919 (Vernon's Ann. Civ. St. Supp. 1922, art. 1206) operates to "expressly abrogate the so-called 'trust fund' doctrine," and that the assets of an insolvent corporation that has ceased to be a going concern is subject to attachment, "unless such assets are drawn into a court of competent jurisdiction through receivership." The amendment

does not, we think, have the effect, express-ly or impliedly, contended for. The amended article is to the extent only that the "dissolution of the corporation" shall not operate to abate suits, pending or afterwards brought, and the same can be prosecuted to judgment "and the assets of said corporation shall be liable for the payment of such judgment just as if said corporation had not been dissolved." The article has especial application to solvent corporations dissolved under statutory authority, voluntary or by judicial process. The amendment was evidently brought about by reason of the doctrine applied in the following decisions: Lumber Co. v. Toole (Tex. Civ. App.) 181 S. W. 823; Transit Co. v. Walton (Tex. Civ. App.) 189 S. W. 307; Id. (Tex. Com. App.) 222 S. W. 979, and in the instant case the suit was not "abated" if the act in that sense and meaning was applicable. The appellant was allowed judgment for his claim, and the same was made payable out of "the assets of said corporation." The appellant was merely denied, in the circumstances, a preference lien over other creditors, the lien having origin in judicial process.

[3] The second point made, before stated, cannot be sustained. The directors, as trustees and being in custody of the property, had the right, and it was their duty, to make such defenses in respect to the trust as should legally have been made. The attachment was an independent proceeding to have the property applied to appellant's claim, and in antagonism to the rights of the trustees to administer the trust. It was not coincident with, but adverse to, the proper administration of the trust.

The judgment is affirmed.