# THE ATTORNEY GENERAL

*v.*

## THE CHICAGO AND EVANSTON RAILROAD COMPANY.

*Filed at Mt. Vernon November 13, 1884.*

1. QUO WARRANTO—*practice—in order to a proper solution of questions involved.* Where the facts relied upon in an answer to a petition for leave to file an information in the nature of a *quo warranto*, are disputed, or new and doubtful questions of law are involved, requiring time for a satisfactory solution, it is the duty of the court to make the rule for an information absolute, to enable a full investigation, otherwise the court, on motion, may discharge the rule and dismiss the petition.

2. CORPORATIONS—*forfeiture of franchise—in what proceeding to be determined.* A cause of forfeiture of a franchise can not be taken advantage of, or enforced against a corporation collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose against the corporation.

3. INJUNCTION—*to restrain acts in the name of a corporation no longer existing.* Where a corporation has ceased to exist and is absolutely dead in law, a court of equity has jurisdiction to enjoin threatened acts by persons assuming to act on behalf of and in the name of the dead corporation.

4. SAME—*or acts of an existing corporation in excess of its powers.* And if a valid corporation assumes to exercise licenses or powers by virtue of an invalid ordinance of a municipal corporation, or in excess of authority legally conferred upon it, a court of equity, upon a proper showing, has jurisdiction to interfere and restrain it.

5. FORMER ADJUDICATION—*how far conclusive upon the same questions when presented in another suit.* If a court having jurisdiction of the parties and subject matter in a suit, makes a decision upon the merits as to questions of law or of fact, its judgment or decree will be conclusive upon such questions in any subsequent suit between the same parties.

6. So where the Attorney General, on behalf of the People, filed an information in chancery against two railway companies, to restrain such companies from building and operating their road within a city, etc., alleging various grounds for the relief sought, which bill, on a hearing after answer, was dismissed, the court in its decree finding in favor of the rights claimed by the railway companies, it was *held*, that such decree was conclusive upon the People on an application in behalf of the People to file an information in the nature of a *quo warranto*, seeking to call in question the right of one of the same companies to exercise the same franchises and perform the same acts as were attempted to be enjoined in the prior suit.

7. SAME—*as to what questions are to be considered as determined in the prior suit.* Where any specific fact or question has been determined in a former suit, it will conclude the parties from raising the same question in a subsequent suit, if properly pleaded, without regard to whether the cause of action is the same or not. This rule is not limited to matters necessarily involved in the prior litigation, but it is equally applicable whether the point was itself the ultimate vital point, or only incidental, but still necessary to the decision of that point.

8. So where a bill seeks to enjoin the performance of certain threatened acts on several distinct grounds, and the court denies all relief, and dismisses the bill on the merits, it must be taken that each and every specific ground alleged as cause for relief was considered and held insufficient, and the decree will be a bar to the investigation of each of such grounds in any subsequent suit against the same or either one of the parties.

APPEAL from the Criminal Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

This was a petition for leave to file an information in the nature of a *quo warranto,* against the Chicago and Evanston Railroad Company, in the circuit court of Cook county. The petition states: That the Chicago and Evanston Railroad Company was incorporated by a special act of the General Assembly, entitled "An act to incorporate the Chicago and Evanston Railroad Company," approved February 16, 1861, for the purpose of constructing and operating a railroad from the city of Chicago to any point in the town of Evanston, (which act is found in the Private and Local Laws of Illinois for the year 1861, at page 487, to which reference is hereby made;) that shortly after the passage of the act, the incorporators named accepted the same, opened books of subscription to the capital stock, and elected officers; that the capital stock was subscribed, but no payments have been made on account of such subscriptions, and no moneys were expended by the company in furtherance of the objects of its incorporation until several years after the present constitution of the State went into effect, which was August 8, 1870; that by section 2, of article 11, of said constitution, it was enacted as

follows: "All existing charters or grants of special or exclusive privileges, under which organization shall not have taken place, or which shall not have been in operation within ten days from the time this constitution takes effect, shall thereafter have no validity or effect whatever;" that said company was not in operation within ten days after the time the constitution took effect, to-wit, August 8, 1870, by reason whereof the special act of incorporation, and all rights therein granted, ceased to have any validity or effect, by reason of such failure to operate said company within the period fixed by section 2, of article 11; that August 17, 1864, an ordinance was passed by the council of the city of Chicago, entitled "An ordinance concerning the maintenance and operation of the Chicago and Evanston railroad in the limits of the city of Chicago," (which ordinance is found in the published volume of the laws and ordinances of the city, known as "Tuley's Laws and Ordinances," at page 230, to which reference is made;) that for the purpose of procuring the approval of the mayor thereto, so that it might become a law, the Chicago and Evanston company contracted with the city that the company should operate the cars and carriages used upon their tracks within the limits of the city, with animal power only, and that the said railway should not connect with any other railroad on which any other power is used, which contract was evidenced by certain resolutions adopted by the directors of the company, April 25, 1864, (which are published in said "Tuley's Laws and Ordinances," at page 233, to which reference is made,) and thereupon, after the passage of said resolutions, the mayor, in consideration thereof, approved the ordinance; that February 6, 1865, an act was passed by the General Assembly, entitled "An act concerning horse railways in the city of Chicago," (which was published in volume 1 of the Private and Local Laws of Illinois for the year 1865, at page 597, to which reference is made,) by section 3 of which act it was declared that the ordinance of August 17,

1864, hereinbefore referred to, was confirmed, and the same was declared to confer upon said company power to construct and operate their road in the streets and over the bridge therein mentioned, until it should be altered, changed or amended by the council, with the consent of the company; that by virtue of the act of incorporation, the ordinance of August 17, 1864, the resolutions and stipulations of the company concerning the same, and the act of the General Assembly of February 1, 1865, as set forth, the Chicago and Evanston company were empowered to construct and operate only a horse railway within the limits of the city, and by virtue of said several acts, resolutions and ordinances, the company was not invested with any power to operate a railroad within the city by other than animal power; that if the company and its franchises are still in existence, notwithstanding the limitation contained in section 2, of article 11, of the constitution, and the failure of the company to construct and operate its road within ten days after the constitution took effect, nevertheless, that the company has no present power to construct or operate any railway within the city to be operated by any other than animal power; that on June 12, 1872, an ordinance was passed by the council, entitled "An ordinance concerning the Chicago and Pacific Railroad Company, and the Chicago and Evanston Railroad Company," (which may be found in the published volume of the laws and ordinances of the city, known as the "Municipal Code of Chicago," page 598, to which reference is made,) by section 7 of which ordinance it was provided that the privileges therein were granted upon the express condition that the Chicago and Pacific company should permit the Chicago and Evanston company to use the tracks authorized to be laid, jointly with the Chicago and Pacific company,—but by section 1 it was provided that the tracks thereby authorized in Hawthorne avenue should be constructed and maintained for passenger cars only; that if the Chicago and Evanston com-

pany was then in existence, which is expressly denied, and if the council could then lawfully grant to the Chicago and Pacific company the privilege of operating their cars over the tracks authorized by the ordinance, with steam power, as by section 2 is attempted, but which is denied, nevertheless; that by virtue of section 1 of the ordinance, the companies were limited to the use of the tracks in Hawthorne avenue for passenger cars only, and could not lawfully construct or operate their tracks within said street for the use of cars for any other purpose than conveying passengers; that by section 7 of said ordinance it was provided that the same should be void unless the tracks were constructed within two years from its passage, and that none of the tracks were laid by either company until on or about the last day of the period, when the companies did construct a certain track for a short distance along Jones and Southport avenues, which track was abandoned and never used; that said track was the first ever laid within the city, or elsewhere, by the Chicago and Evanston company, and after the laying of such track, in 1874, and its abandonment, said company did nothing further by way of constructing or operating its railroad prior to the fall of 1882, since which time it has constructed a small portion of its line northwardly from Hawthorne avenue, but that it has never completed the construction of its line as authorized by its charter or the ordinance of 1864, and has never operated its line, either in whole or in part, either by steam or animal power; that December 27, 1876, an ordinance was passed by the council, entitled "An ordinance repealing all ordinances heretofore passed granting any rights and privileges to the Chicago and Evanston Railroad Company," (which ordinance will be found in the published volume of the proceedings of the council for the municipal year 1876 and 1877, at page 300, to which reference is made,) by virtue of which all the rights theretofore granted by the city to the company were wholly repealed; that December 24, 1883, an ordinance was

passed by the council of the city of Chicago, over the veto of
the mayor, entitled "An ordinance concerning the Chicago
and Evanston Railroad Company, and the Chicago and Lake
Superior Railroad Company," (which ordinance may be found
in the published proceedings of the council for the municipal
year 1883 and 1884, beginning at page 306, to which refer-
ence is made,) which ordinance was formally accepted by
a resolution of the company, shortly after its passage; that
even if the company is still in existence as a corporation,
which is denied, nevertheless, the council had no power to
confer upon the company the privileges in said ordinance
attempted to be conferred, and especially that the council
had no power to authorize the company to construct and
operate its road upon the route in said ordinance described,
the same being another and different route from that located
by the ordinance of 1864; that the council had no power to
authorize the company to construct a bridge across the north
branch of the Chicago river, as by section 2 of the ordinance
is attempted to be conferred; that the council had no power
to authorize the company to use and operate the tracks in
said ordinance authorized to be laid in Canal street, or the
tracks in and by said ordinance authorized to be laid in Haw-
thorne avenue, for the reason that no petition of the property
owners representing more than one-half the frontage on said
streets, respectively, or so much thereof as is authorized by
said ordinance to be used for railroad purposes, had ever
been obtained for such use.; that the council had no power
to authorize said company to construct or operate any tracks
within the city, to be operated by any other than animal
power; that notwithstanding the premises, the Chicago and
Evanston company still claims and asserts that it is a valid
corporation, entitled to exercise all the rights and franchises
granted by its act of incorporation and the ordinances here-
inbefore set forth, and especially the right of constructing and
operating a railroad to be operated by steam power, from a

point within the city of Chicago to a point within the town of Evanston; that it likewise claims the right to, and threatens that it will, construct and operate the line of railroad within the limits of the city, as located by said ordinance of December 24, 1883; that it likewise claims and asserts the right to, and threatens that it will, forthwith construct and operate, for railway purposes, a bridge across the north branch, as authorized by said ordinance; that it likewise claims and asserts the right to, and threatens that it will, construct and operate the tracks by said ordinance of December 24, 1883, authorized to be laid in Canal street, as well as the tracks thereby or theretofore authorized to be laid in Hawthorne avenue, for all general business incident to railroads, including the transportation of freight, passenger and other cars, and by steam power, without the consent of the owners of the land representing more than one-half the frontage of said streets, or so much thereof as is sought to be used; that it likewise claims and asserts the right to, and threatens that it will, operate, by steam power, for all general business incident to railroads, the tracks and bridge so authorized to be constructed within the city; that it likewise claims and asserts the right to construct and operate by steam power, for all general business incident to railroads, a railroad, with one or more tracks, and the necessary switches, sidings and turnouts, from a point near the junction of Larrabee street with Hawthorne avenue, thence southwardly upon the route described in section 2 of said ordinance of December 24, 1883, and across the Chicago river by means of a bridge, as in said section described, and across West Kinzie street, to a point of connection with the railroad tracks now in use on Canal street, there to connect with such tracks now owned by other companies, and operated by them, by the use of steam power, for all railroad business, and thence to reach the union depot used by such other companies, and located on Canal street, near Madison,—all which rights, privileges and franchises

said company threatens that it will forthwith exercise, and all of which are unlawfully usurped by said company, without legal authority, and praying leave to file an information in the nature of a *quo warranto,* in the name of the People of the State of Illinois, against said company, requiring it to show by what warrant it claims to exercise the rights, privileges, franchises and licenses enumerated, and each of them, and for process.

On the same day, a rule was entered on the Chicago and Evanston Railroad Company to show cause why leave should not be granted to file the information prayed for. The respondent showed cause, by its answer and motion to discharge said rule, which answer was substantially as follows: That it was incorporated by a special act of the General Assembly, (naming it,) and denies that it had not been in operation prior to the time that the constitution took effect, but avers that February 19, 1861, all the corporators named in the charter, met, accepted the charter, and adjourned to the next day, when the incorporators then constituting the board of directors, elected a president, vice-president, and secretary; that February 21, 1861, the commissioners of highways for the town of Lake View, by an instrument in writing, granted the company the right to lay down and operate its railroad cars upon all the roads and highways in said town upon which the route might be located, and February 22, 1861, a like privilege was granted by the commissioners of highways of Evanston; that on or prior to March 10, 1862, a lot was purchased by the company in the town of Evanston, to construct a depot, and on March 10, 1862, the company accepted the grants of the rights of way from the commissioners of highways of Lake View and Evanston, and also said lot; that November 3, 1862, books of subscription to the capital stock were opened, and eight hundred shares, of the par value of $80,000, were subscribed by responsible parties, and June 4, 1864, books for the subscription of the balance of the capital stock

of $100,000 were opened, and two hundred shares, of the par value of $20,000, were subscribed by a responsible party; that June 10, 1864, the capital stock was increased, pursuant to the charter, to $300,000; that June 15, 1864, books of subscription to the increased capital stock were opened, and the whole amount was subscribed by responsible parties; that August 17, 1864, an ordinance was passed by the city, mentioned in the petition herein, granting the company the right to use certain streets, and to cross the Chicago river, or the north branch thereof, as will more fully appear by reference to the ordinance; that February 6, 1865, the legislature passed an act, entitled "An act concerning horse railways in the city of Chicago," (printed in the Private and Local Laws of 1865, at page 597, to which reference is made;) that by said act the legislature amended the charter of the company, and ratified the ordinance of August 17, 1864, and recognized the company as an existing corporation; that afterwards, in the summer of 1865, the Superior Court of Chicago entertained jurisdiction of a suit in chancery, wherein John Evans was complainant, and various persons then acting as directors and officers of the company, were defendants, and issued an injunction against the defendants, prohibiting them from constructing the said road, which was in force when the constitution of 1870 took effect, and remained in force until 1872, when it was dissolved by the court, as having been wrongfully issued. So it says it had been organized under its charter before the constitution took effect, and that it was at that time an existing charter or grant, under which organization had taken place, and which had been in operation before that time. The answer avers that the Chicago and Pacific company constructed its tracks from the western limits of the city to and across the north branch, to Jones avenue, thence along Jones or Hawthorne avenue, etc., within one year after June, 1872; that afterwards, before June 12, 1874, tracks were put down on Hawthorne avenue by the Chi-

cago and Pacific and the Chicago and Evanston companies, jointly, and have been used from that time to the present, under said ordinance, by the Chicago and Pacific company, with the consent of and under contract with the Chicago and Evanston company, and the latter company has, during all said time, owned and now owns an undivided half of said track on Hawthorne avenue; that between June 1 and 12, 1874, a track was laid on Jones avenue, (now called Hawthorne avenue,) from a point of junction of the former tracks to Southport avenue, and on Southport avenue to the city limits; that during said time, at the suit of William Lange, the circuit court of Cook county enjoined the further construction of said tracks, and the running of cars thereon, but on June 7, 1874, the order was so modified as to allow the completion of said track, and the same was completed before June 12, but the injunction was continued to prevent the running of cars and locomotives, and remained in force until June 29, 1877, when it was dissolved, and the bill was dismissed November 14, 1881; that the tracks so laid on Jones or Hawthorne avenue, north of the junction with the Pacific road, remained undisturbed until April, 1882, when the rails were taken up by authority of respondent, and heavier steel rails laid in place thereof, and said track has since been used for the running of trains, and the rails so laid in Hawthorne avenue, respondent was unable to use, and they were covered up, in order to allow the undisturbed use of the street, and remained until, from time to time, the rails were taken up for the construction of water or sewer connections, and in September, 1882, the track on Southport avenue was relaid with heavier steel rails, and put in condition for operation, and locomotives and cars have been run on said track ever since. The answer recites section 3 of the act of February 6, 1865, (the ninety-nine years' act,) and denies that the act of incorporation and the ordinance of August 17, 1864, and the resolution and stipulation of the company concerning the same,

34—112 ILL.

and the act of the 6th of February, 1865, are a limitation upon the powers conferred upon the company to construct and operate by steam power the railroad authorized by the charter, and avers that the authority of the company existed prior to the passage of the act of February 6, 1865; but if there was any doubt on that question, such authority and power were fully conferred on the company by the act of February 6, 1865, and in and by said act the company was authorized to locate its route and construct its line within the city, or to cross the river or the north branch at any other point, if authorized by the council. The answer admits the passage of the ordinance of June, 1872, and says that this ordinance was, on September 15, 1872, accepted by the Evanston company, and at the same time the company surrendered all claims to the use of Halsted street, as provided in said ordinance, and claims that under said ordinance the Chicago and Pacific company and the Evanston company had and have full authority to operate the road of said companies, or either of them, in any of the streets named in said ordinance, by steam or other power, and for passenger or other cars, as the companies might elect. The answer admits that December 27, 1876, the council passed an ordinance purporting to repeal all ordinances theretofore passed, granting any rights to the company, but says that such repealing ordinance was void, for the reason that vested rights had been acquired by the company, and contracts with the city made before that time; that October 6, 1877, a decree declaring said ordinance to be void, and that the Chicago and Evanston railroad was entitled to the rights conferred by the acts of the legislature passed February 16, 1861, and February 6, 1865, and the ordinances passed August 17, 1864, and June 12, 1872, was entered by the Circuit Court of the United States for the Northern District of Illinois, in a suit in which John S. Gibbs was complainant, and the city of Chicago and others were defendants, which decree remains in full force.

Respondent admits that the council, December 24, 1883, passed an ordinance concerning the Chicago and Evanston and the Chicago and Lake Superior company, as charged in the petition, which ordinance was formally accepted, by resolutions of the companies, shortly after its passage; and respondent denies the averment that the council had no power to authorize the company to construct a bridge over the north branch, or to lay the tracks mentioned in the ordinance, and denies that any petition of the owners of land is necessary to give authority or power to the council to permit the tracks mentioned in the ordinance to be laid, or any part thereof, and denies that the ordinance, or any part thereof, is invalid; admits that it claims and asserts the right to construct its road on the streets mentioned and described in said ordinance of December, 1883, and to bridge the river, as provided in said ordinance, and to connect its track with the tracks now laid in Canal street, and to operate said line, when so constructed, for the general purposes and business of railroads, with passenger, freight and other cars, and by steam or other power; and also, by virtue of the franchises granted by its original charter, to construct and operate said railroad to and within the village of Evanston, and it is now engaged in the construction of said road, and has expended thereupon upwards of $500,000; denies that Luther Laflin Mills, State's attorney of Cook county, has any authority to file said information, and says, on information and belief, that this procedure is attempted to be instituted by said State's attorney at the instance of the Chicago and Northwestern Railroad Company, etc.; says that the Criminal Court of Cook county, November 1, 1883, in a suit then pending before it, of which it had jurisdiction, wherein James McCartney, the Attorney General, who sues in behalf of the People, was complainant, and respondent was defendant, rendered a judgment quashing and dismissing a certain information in the nature of a *quo warranto*, and vacating the order allowing it to be filed,

which said judgment remains in full force, whereby petitioner is estopped from questioning the existence of respondent as a corporation, or its right to use the streets mentioned in the ordinance hereinbefore set forth, and respondent makes said judgment and record a part of its answer to said petition, and especially to so much thereof as seeks to question the authority of respondent with reference to the streets mentioned in said ordinance of 1872; says that December 19, 1883, James McCartney, as Attorney General, in behalf of the People, filed his certain other information against the respondent and the Chicago and Lake Superior company, (in the Superior Court, in chancery,) whereby the court was informed that the respondent, under its charter, and the amendments thereto, and the several ordinances of the city, (which were especially referred to and made a part of said information and of said petition herein,) had no authority to construct or operate the railroad track described in and authorized by said laws and ordinances, and thereupon prayed for an injunction restraining said companies from constructing and operating said roads, to which bill respondent filed its answer, like, in substance, to respondent's answer to said petition; that on the ―― day of February instant, said Luther Laflin Mills, upon his petition and by leave of court, became a complainant to said bill, as said State's attorney, in behalf of the People, and is still a complainant in said cause, and concluded by the judgment of said court therein; that subsequently, upon full hearing of the proofs and evidence, and arguments of counsel, the court held and decreed that respondent had legal authority, under its charter and amendments, and the ordinances of the city, hereinbefore referred to, to construct, maintain and operate its railroad across the north branch, and the streets and alleys described in and authorized by said ordinance of December, 1883, and from thence to the village of Evanston; and thereupon (February 29,) the court

entered a final decree in said cause in favor of the defendants, in which the People prayed, and were allowed, an appeal to the Supreme Court, and respondent makes the record of said cause a part of its answer to said petition, and says that said Superior Court had jurisdiction of the parties to said cause, and of the subject matter thereof; that said decree remains unreversed; that the rights of respondent to construct and operate its said road have been judicially determined in said cause, and that the said State's attorney and the People are concluded thereby.

April 5, 1884, the rule to show cause came on for hearing, on the return of the respondent, and the respondent's motion to vacate and discharge the rule, and upon the hearing there were read, on behalf of the petitioner, the various statutes and ordinances referred to in the petition, copies of which were filed with the petition as exhibits. To support its return, the respondent offered in evidence the record, proceedings and decree in the case of the Attorney General against the same respondent, in chancery; also, the record of a *quo warranto* proceeding in the Criminal Court of Cook county, by the Attorney General, against the Chicago and Evanston Railroad Company, as defendant, in which a final order was entered November 1, 1883, quashing the information, and dismissing the proceeding. Respondent also offered a certified copy from the minutes of the board of directors of respondent, from February, 1861, to June, 1864; also, the charter of the respondent, the act of the legislature of 1865, concerning horse railways, and the ordinances of the city mentioned in the answer, and the record of the circuit court of Cook county in the case of Lange and others against respondent. The court thereupon ordered that the rule to show cause be discharged, and the petition dismissed, to which the petitioner excepted, and prayed this appeal.

Mr. M. W. FULLER, and Mr. J. L. HIGH, for the appellant:

Leave to file the information should not be arbitrarily refused. Probable ground is sufficient. *People* v. *Callaghan,* 83 Ill. 131; *People* v. *Waite,* 70 id. 75.

Unless the cause shown puts the matter beyond dispute, the rule should be made absolute. Buller's Nisi Prius, 210; Angell & Ames on Corp. 740, 741; *King* v. *Meiss,* 3 T. R. 596.

When the questions raised are doubtful or new, leave should be granted. Angell & Ames on Corp. secs. 740, 741; *Rex* v. *Carter,* Cowp. 58; Lofft, 518.

The information may combine several counts, charging the usurpation of distinct and different franchises. Cole on Informations, 194, 195, 520; Tancred on Quo Warranto, 284; *Symers* v. *Regina,* Cowp. 489; *People* v. *Mobley,* 1 Scam. 215; *King* v. *City of London,* 8 Howell's St. Tr. 1039; *King* v. *Amery,* 2 T. R. 517; *People* v. *Turnpike Co.* 23 Wend. 193.

As to the question of *res judicata,* see 2 Bouviers' Law Dic. 467; Freeman on Judgments, sec. 252; *Aspden* v. *Nixon,* 4 How. 467; *Miller* v. *McMauries,* 57 Ill. 128; *Bennett* v. *Holmes,* 1 Dev. & Bat. L. 19 N. C. 486; *Duchess of Kingston's case,* 1 St. Tr. 261; *People* v. *Johnson,* 38 N. Y. 65; *Yates* v. *Briggs,* 95 Ill. 79; *Haigh* v. *Keokuk,* 4 Clark, 199; *Beckwith* v. *Thompson,* 18 W. Va. 103; *Hibshman* v. *Dulleban,* 4 Watts, 183; *Hanna* v. *Read,* 102 Ill. 596; *Packet Co.* v. *Sickles,* 5 Wall. 592.

A cause of forfeiture can not be enforced collaterally against a corporation. *Baker* v. *Backus,* 32 Ill. 110; Angell & Ames on Corp. 746; *King* v. *Parsmon,* 3 T. R. 132.

But this is not so in the case of the absolute death of the corporation. Here the constitution executed itself, and no judicial finding of a forfeiture was necessary. *Casey* v. *Railroad Co.* 5 Iowa, 359; *In re Railroad Co.* 72 N. Y. 245; *C. L. and B. Co.* v. *Commonwealth,* 100 Pa. St. 438; *Coal Co.* v. *Railroad Co.* 4 Gill & J. 1; *Greely* v. *Smith,* 3 Story, 657; Const. 1870, art. 11, sec. 2.

Mr. W. C. GOUDY, for the appellee:

The judgment of a court of competent jurisdiction upon a point litigated between the parties, is conclusive in all subsequent controversies. *Demarest* v. *Darg*, 32 N. Y. 281; *Cole* v. *Connelly*, 16 Ala. 271; *Hutchinson* v. *Dearing*, 20 id. 798; *Kingsland* v. *Spalding*, 3 Barb. 341; *Tyler* v. *Willis*, 35 id. 213; *Warwick* v. *Underwood*, 3 Head, 238.

Any matter regularly determined, in whatever form, by a competent tribunal, is not open to inquiry in any other proceeding between the same parties. *Hyatt* v. *Bates*, 35 Barb. 308; *Harris* v. *Harris*, 36 id. 88; *Babcock* v. *Camp*, 12 Ohio St. 11.

Whatever is fairly within the scope of the pleadings in a suit, is concluded by the judgment. *Aurora City* v. *West*, 7 Wall. 82; *People* v. *San Francisco*, 27 Cal. 655; *Boston* v. *Haynes*, 23 id. 31; *McGregor* v. *Holcomb*, 21 Iowa, 441; *Duncan* v. *Holcomb*, 26 Ind. 378; *Bouvillian* v. *Bourg*, 16 La. Ann. 363; *Driscoll* v. *Damp*, 16 Wis. 106; *Kalisch* v. *Kalisch*, 9 id. 529; *Shepardson* v. *Casey*, 29 id. 34; *Amory* v. *Amory*, 26 id. 152; *State* v. *Hudson*, 37 Ind. 198; *Bumhill* v. *Railroad Co.* 51 id. 354; *Evans* v. *Railroad Co.* id. 160; *Felt* v. *Lumure*, 48 Iowa, 397; *Ligon* v. *Triplett*, 12 B. Mon. 281; Freeman on Judgments, secs. 254, 255; Bigelow on Estoppel, 126.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

If the facts relied upon by the respondent, in answer to the rule to show cause, were disputed, or if new and doubtful questions of law were presented that would require more time for their satisfactory solution than could reasonably be given to them on such an application, then, under the authorities referred to by the relator, (Buller's Nisi Prius, 210, Angell & Ames on Corp. secs. 740, 741, and *King* v. *Meiss*, 3 T. R. 596,) it would, doubtless, be the duty of the court to make the

rule for an information absolute, "that the questions might receive a full and final determination." But the relator concedes that the facts relied upon by the respondent, in his answer to the rule to show cause, are not disputed, and we are of opinion that the questions of law presented may receive as full and careful consideration on this application as could be given them were the rule to show cause made absolute. The only effect, therefore, of reversing the judgment below, and directing the circuit court to make the rule absolute, would be to procrastinate the litigation, without producing any benefit to either party, for the decision of the questions of law upon precisely the same undisputed facts, we must assume, would be the same on the final hearing of the *quo warranto* as on this motion.

The respondent, among other things, sets up in his answer to the rule to show cause, that on the 19th of December, 1883, the Attorney General, in behalf of the People, filed his certain information in chancery, in the circuit court of Cook county, against the present respondent and the Chicago and Lake Superior Railroad Company, wherein are the same allegations, in substance, as those in the petition in this case; that respondent filed its answer to that information, in substance, and in other respects than this allegation, like its answer to this petition, and that subsequently, "upon full hearing of the proofs and evidence, and arguments of counsel, the court held and decreed that respondent had legal authority, under its charter and amendments and the ordinances of the city, to construct, maintain and operate its railroad across the north branch of Chicago river, and the streets and alleys described in and authorized by the ordinance of December, 1883, and from thence to the village of Evanston, and that thereupon, on the 29th of February, 1884, the court entered a final decree in said cause, in favor of the defendants." The only difference between that information and this petition is in their respective prayers. That in the information is, that

this respondent and the Chicago and Lake Superior Railroad Company "be enjoined and restrained from in any manner building, erecting, constructing or working upon any railroad track, embankment, superstructure or railroad, not already built, in any of the streets of said city of Chicago, and from building, erecting, constructing, or in any way beginning to construct, erect or build, any bridge over or across the north branch of the Chicago river, and from operating, by steam or other power, any railroad cars, or trains of any kind, over any tracks or bridge the construction of which is attempted to be authorized by the ordinance of December, 1883, and from operating, by steam or other power, any railroad cars, or trains of any kind, upon any tracks which were authorized to be laid upon Hawthorne avenue, in said city of Chicago, before the passage of said December ordinance,"—while that in this petition is, only, that leave be given to file an information in the nature of a *quo warranto*, in the name of the People of the State of Illinois, and against said company, requiring it to show by what warrant it claims and exercises the rights, privileges, franchises and licenses enumerated, and each of them. Had affirmative relief been granted on the information, it undoubtedly might have been on any one of the specific grounds alleged in the information, and thus have confined the question actually decided, to that one specific ground; but the court having denied all relief, it must follow that each specific ground alleged in the information was considered and held insufficient. This, of course, assumes, *in limine*, that the court had jurisdiction of the subject matter as well as of the parties, for this, in all cases, is essential to a valid adjudication. On that point we entertain no doubt. The general doctrine that a cause of forfeiture can not be taken advantage of or enforced against a corporation, collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose, against the corporation, is conceded. But the present case is different. Here, the objection

to the corporate existence of the respondent, if good at all, shows an absolute death of it on the day of the adoption of the present constitution, and not merely the existence, from and after that date, of cause of forfeiture,—and in such cases injunction will lie to enjoin threatened acts by those assuming to act in behalf and in the name of the dead corporation. *Casey* v. *Railroad Co.* 5 Iowa, 357; *In re B., W. and N. R. R. Co.* 72 N. Y. 245; *Brooklyn Steam Trans. Co.* v. *Brooklyn*, 78 id. 524; *C., L. and B. Co.* v. *Commonwealth*, 100 Pa. St. 438; *Coal Co.* v. *Railroad Co.* 4 G. & J. 1; *Greely* v. *Smith*, 3 Story, 657; *Railroad Co.* v. *Railroad Co.* 36 Conn. 196; *Railroad Co.* v. *Railroad Co.* 45 Cal. 365. And the doctrine has been frequently recognized and enforced by this court, that where a valid corporation assumes to exercise licenses or powers by virtue of invalid ordinances of a municipal corporation, or in excess of authority legally conferred upon it, a court of equity, upon a proper showing, has jurisdiction to interfere and restrain it.

There being jurisdiction, and the court having, in order to arrive at the decision evidenced by its decree, to necessarily pass upon every question of law raised by this petition, its decisions thereon are conclusive in the present case. This question was fully considered by this court in *Hanna* v. *Read*, 102 Ill. 596, and again in *Tilley* v. *Bridges*, 105 id. 336. In the first named case there had been a decree of the circuit court of Vigo county, Indiana, between the same parties in interest,—although the nominal parties were different,—declaring that Ezra B. Read, at the time he executed certain deeds, was insane, and that the deeds were therefore invalid. The bill in that case was filed in the circuit court of Cook county, to set aside one of those deeds on the ground of Read's insanity, and it was held the adjudication of that question by the Vigo, Indiana, circuit court, was binding and conclusive upon the Cook circuit court. The property in litigation in the two different courts was not the same, but the deeds to

the property in Indiana and in this State were executed in the same transaction, and as nearly at the same time as was possible. Among other things, we then said: "Where some specific fact or question has been adjudicated and determined in a former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties, its determination in the former suit, if properly presented and relied on, will be held conclusive upon the parties in the latter suit, without regard to whether the cause of action is the same in both suits or not.   *   *   *   Whether the adjudication relied on as an estoppel goes to a single question or all the questions involved in a cause, the fundamental principle upon which it is allowed, in either case, is, that justice and public policy alike demand that a matter, whether consisting of one or many questions, which has been solemnly adjudicated by a court of competent jurisdiction, shall be deemed finally and conclusively settled in any subsequent litigation between the same parties, where the same question or questions arise, except where the litigation is a direct proceeding for the purpose of setting aside such adjudication." This doctrine is limited to matters necessarily involved in the litigation, but it is equally applicable whether the point was, itself, the ultimate vital point, or only incidental, but still necessary to the decision of that point.   Bigelow on Estoppel, (1st ed.) 95; id. (2d ed.) 36; Freeman on Judgments, secs. 254, 255, 260; *Demarest* v. *Darg*, 32 N. Y. 281.

The judgment below is affirmed.

*Judgment affirmed.*