## City of Chicago, Appellant, v. Chicago Railways Company, Appellee.

### Gen. No. 28,132.

1. PUBLIC CONTRACTS—*pleading express contract as basis for recovery on implied contract.* It was not error for the municipal court of Chicago to strike from the files, in an action in assumpsit, plaintiff's amended statement of claim and to dismiss the action upon plaintiff's election to stand on such statement, where the latter sets up an ordinance contract between the parties for the use of plaintiff's streets for defendant's street railway system and the payment of a percentage of defendant's net receipts to plaintiff under the terms of such contract, that defendant has tendered the

sum to plaintiff under the contract, plaintiff's refusal to accept because of an alleged cancellation of the contract by the city for breach thereof by defendant, and seeks to recover the same sum, not under the contract but on an implied contract under the theory that defendant collected the amount from its passengers in increased fares which were paid to defendant for payment to plaintiff under the ordinance.

2. COURTS—*dismissal of cause in law of which equity has previously acquired jurisdiction.* The municipal court of Chicago properly dismissed an action in assumpsit by the City of Chicago to recover a sum claimed to be due from defendant under an ordinance contract requiring defendant to pay to the city a percentage of its net receipts, where the statement of claim sets up the ordinance contract, accrual of rights thereunder, tender of the amount by defendant and its refusal by the city on the ground that the contract has been canceled by the city for breach by defendant, a claim that the amount is due under an implied contract, and that a suit has been commenced by the city in equity to have such contract ordinance canceled and annulled and that the city "is now prosecuting" such suit.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. CHARLES F. MCKINLEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1922. Affirmed. Opinion filed April 24, 1923.

SAMUEL A. ETTELSON, for appellant; DANIEL A. ROBERTS, ROBERT L. CAMPBELL and EDWARD C. HIGGINS, of counsel.

W. W. GURLEY and HARRY P. WEBER, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

On March 27, 1922, the municipal court sustained defendant's motion to strike plaintiff's amended statement of claim from the files and, plaintiff having elected to stand by said statement, dismissed the suit and entered judgment against plaintiff for costs. This appeal followed.

The action is one of the first class in assumpsit, commenced June 25, 1921. Plaintiff claims there is due it, including legal interest, over two and one-half

million dollars. Its original statement of claim was ordered stricken and it filed the amended statement in question on February 6, 1922.

It is therein alleged that plaintiff and defendant entered into a contract, which is evidenced by an ordinance passed by the city council on February 11, 1907, and thereafter approved by the voters of the city on a referendum vote and accepted by defendant on January 29, 1908; that by this contract ordinance defendant was given the right by the city to construct, maintain and operate a system of street railways in certain streets and public ways for the term ending February 1, 1927, and no longer, and defendant waived and released all other rights it claimed to have to construct, maintain and operate street railways in such streets and ways, and agreed to furnish to the people of the city first-class railway service during the term of the contract ordinance for a five-cent fare for each passenger of twelve years of age or over for a continuous trip in one general direction within the then or future limits of the city; and that said contract ordinance contained provisions for building up and ascertaining the price which the city or its licensee would have to pay defendant in case the city or its licensee should purchase defendant's street railway properties, which price was known as the capital account or purchase price. Certain provisions of the contract ordinance are then set forth *in haec verba,* among them those headed "Interest Return on Capital Investment," wherein it is provided in substance that on or before April 10 in each year the company shall come to an accounting and settlement with the city as of January 31, last preceding; and that from the gross receipts of the company's street railway system and property, from all sources and of every kind, for the year ending on said January 31, there shall be deducted for such year: *First:* (1) All expenses of op-

eration including maintenance, repairs and renewals; (2) All amounts contributed during said year and then held in reserve "under the provisions of sections 16 and 18 hereof"; (3) All amounts paid out for taxes and assessments levied or imposed upon the real and personal property of the company (including certain enumerated taxes and excluding other enumerated items); (4) All salaries and expenses of the Board of Supervising Engineers by this ordinance authorized, after the period of "Immediate Rehabilitation"; and *Second:* A sum equivalent to five per cent per annum for said preceding year upon the amount of the cash purchase price which the city would be obligated to pay on account of the items "specified in subdivisions 1, 2 and 3 of section 20 hereof," if it were purchasing the property for municipal operation on such 31st day of January, interest being adjusted as to items added to such purchase price during the year. Certain provisions as to certain contingencies are then set forth. Then follow the provisions:

*"Division of Remaining Net Receipts.*

"After the deduction from the gross receipts of the items hereinbefore in this section provided, the amount remaining shall be considered as the net receipts for such year arising from the operation of the street railway system hereby authorized, and shall be divided between the company and the said city in the following proportions: forty-five (45) per cent to be retained by the company and fifty-five (55) per cent to be paid forthwith by the company to the said city, crediting thereon all amounts paid out during the preceding year by the company for license fees, if any, exacted from the company or its employees."

*"Commutation of Fares.*

"It is understood and agreed that the company's agreement and obligation to pay the city the fifty-five (55) per cent of the net receipts, as hereinbefore provided is based upon its right to charge and receive the fares prescribed in section 11 hereof and to retain as its own the forty-five (45) per cent of the net receipts

as is hereinabove in this section provided. The said city, however, reserves the right to, and it may at any time commute a sum not exceeding the city's share of the net receipts for the previous year into a reduction of said rates of fare; and thereafter in the event of such reduction of rates of fare the company may deduct and retain as its share of the net receipts each year an amount equal to what would have been the company's share of the net receipts of such year had the passengers carried during such year paid the fares prescribed in this ordinance, but the company, after deducting and retaining its share of said net receipts so determined shall pay over to the said city the remainder, if any, of the net receipts for such year less the deductions therefrom hereinbefore provided to be made from the said city's share of the net receipts on account of license fees.''

*"City to Establish Sinking Fund for Municipal Purchase.*

"It is further provided that, subject to the action of the city council of said city, the said city shall deposit the amount so paid to the said city to the credit of a separate fund to be kept and used for the purchase and construction of street railways by said city; but any failure to comply with this provision shall in no way affect the rights or obligations of the company under this ordinance."

It is further alleged in said statement of claim that said contract ordinance, which will be produced on the trial, contains many other provisions, all of which are dependent and inseparable; that defendant has never, during the term of the contract, furnished to the people of the city first-class street railway service, but that the service has been and is now grossly inadequate and inefficient; that defendant charged the rates of fare fixed in the contract up to August 8, 1919; that since that date it has charged rates of fare, as follows: From August 8, 1919, to December 1, 1919, the sum of seven cents for each passenger twelve years of age or over; from December 1, 1919, to December 27, 1919, for cash fares seven cents and ticket

fares of ten tickets for sixty-five cents and coupon books giving fifty rides for three dollars; from December 27, 1919, to July 1, 1920, for cash fares six cents; from July 1, 1920, to the present time the sum of eight cents for each passenger twelve years of age or over; that defendant "has also breached and repudiated said contract in other essential particulars, among them being that the defendant has taken and appropriated, and was when this suit was begun and is now taking and appropriating, to itself more for the return upon its investment than it was entitled to under said contract, and has been diverting, and at the time this suit was begun was and is now diverting, the depreciation reserve fund provided for by said contract from the purpose for which it was to be used under said contract to the purchase of new equipment in violation of the terms of said contract''; and that on February 4, 1921, the city council of the city, "as it had the right and authority to do," passed an ordinance canceling and annulling said contract.

This ordinance is then set out in full. In its preamble is set forth, *inter alia,* the passage of said contract ordinance of February 11, 1907; its acceptance by defendant; the passage of other similar contract ordinances with the Chicago City Railway Company, the Calumet and South Chicago Railway Company, and the Southern Street Railway Company, and their respective acceptances; the passage on November 13, 1913, of an ordinance authorizing the unified operation of the street railways of said four companies, and the passage from time to time of numerous other ordinances "pursuant to and in aid of and amendatory of said contract ordinances''; that said companies took possession of the streets and ways of the city and are now engaged in operating their street railways thereon, and have retained and still retain all the benefits and advantages of said ordinances; that said companies, and each of them, about Novem-

ber, 1918, "took the position that they were not bound by many of the essential terms and provisions of said contract ordinances, and thence, hitherto, have persistently adhered to and are still adhering to their said position, and have repudiated, neglected and refused to and still repudiate, neglect and refuse to keep, live up to and perform said contract ordinances in many essential particulars"; that by the orders and authority of the mayor of the city, its corporation counsel has taken the position, and so notified the companies, that, because of their action in so repudiating and refusing, etc., the city has elected to and has canceled, annulled and terminated each and all of said contract ordinances in their entirety; that said corporation counsel, pursuant to the orders and authority of the mayor, "has instituted and is now prosecuting, in the Circuit Court of Cook County, a proceeding in chancery, No. B 57959, and entitled 'City of Chicago, Complainant vs. Chicago Railways Company, and others, Defendants,' to have said contract ordinances, and each of them, declared to be canceled, annulled, abrogated and terminated in their entirety"; that said companies and each of them have for many months refused to make extensions of their lines in accordance with the provisions of said contract ordinances and have taken the position, in which they still persist, that they are not bound by said ordinances to make such extensions; and that the security and convenience of the people of the city require that many additions, extensions, repairs and improvements in the existing plant, equipment and facilities of the companies be made immediately. It is thereupon ordained by the city council that the action of the mayor and corporation counsel in canceling, annulling and terminating said contract ordinances on behalf of the city be and the same is ratified and approved; that the action of the mayor and corporation counsel in instituting and prosecuting said proceeding in said circuit court be

ratified and approved; that said contract ordinances, and each of them, be, and they are, declared to be canceled, annulled and terminated in their entirety "because of the repudiation thereof and the refusal to keep, live up to and perform the same in essential particulars by the said companies and each of them."

It is further alleged in said statement that said last mentioned ordinance has been in full force and effect since its passage, and that "the recitals of fact therein contained are true," and that

"On or about April 10, 1920, the defendant offered to the comptroller of the plaintiff its check for $1,004,362.22, and on April 9, 1921, the defendant offered to said comptroller its other check for $1,401,-356.12, as and for the amounts the defendant claimed were due the plaintiff for its fifty-five per cent of the divisible net receipts under said contract for the years ending January 31, 1920, and January 31, 1921, respectively. The defendant at the time it tendered each of said checks insisted that the plaintiff must accept the same, if at all, under said contract and in such way and manner as to recognize that such contract was then and there in full force and effect and so as to waive any and all breaches and repudiations of said contract by the defendant and so as to waive and release the right of the plaintiff to abrogate, annul, cancel, rescind, set aside and terminate said contract because of the breach and repudiation thereof by the defendant. The defendant has not paid said sums of money or any part thereof to the plaintiff but has kept and retained and still keeps and retains the same. The plaintiff avers that said offers were not, nor was either of them, a legal tender and that the defendants have not kept said offers good as legal tenders."

"The defendant collected said sums of money and each of them from the passengers on its said street railway lines *for the purpose of paying the same to the plaintiff;* and the passengers on said street railway lines paid said sums of money and each of them to the defendant *for the purpose of paying the same over to the plaintiff.*"

"Since August 8, 1919, the defendant has charged and collected from its passengers rates of fare fixed and authorized by the Public Utilities Commission of Illinois, which Commission existed under an act of the general assembly of the State of Illinois entitled 'An Act to provide for the regulation of public utilities' approved June 30, 1913; in force January 1, 1914; and not otherwise. Such rates of fare were different at different times as hereinbefore set forth; but each and all of said rates of fare were fixed and established upon the basis that the defendant herein would pay to the plaintiff herein 55 per cent of its divisible net receipts after having deducted from its gross receipts its operating expenses and 5 per cent of the amount of the purchase price or capital account as established under said contract between the plaintiff and the defendant herein. Wherefore, the plaintiff avers that the amounts so tendered by the defendant to the plaintiff, as hereinbefore shown, were received by the defendant herein for the use of the plaintiff herein; that the defendant has no right, in law or equity, to said sums of money or any part thereof; but that, in equity and good conscience, the same belong to the plaintiff."

Accompanying said amended statement of claim is the affidavit of an agent of plaintiff, in which it is stated that the suit is for the recovery of money only; that the nature of plaintiff's demand is as set forth in said statement of claim; and that there is due plaintiff from the defendant the sum of $2,405,718.34, "together with legal interest upon the sums of $1,004,-362.22 and $1,401,356.12, mentioned in said statement of claim, *from the time they respectively became due,* after allowing to the defendant all just credits, deductions and set-offs." From the certificate of evidence signed by the trial judge it appears that, on the hearing of the motion to strike, plaintiff's counsel referred to rules 14, 15, 16 and 21 of said Municipal Court, which said rules are set forth at length in said certificate, as is also defendant's written motion to strike

said amended statement of claim and to dismiss the suit.

From the foregoing amended statement of claim it appears that the city seeks to recover from defendant, under an *implied* contract (and not under the contract ordinance of February 11, 1907, which defendant accepted), two large sums of money, together with legal interest thereon from the time they respectively became due *under said ordinance,* which sums were in apt time duly tendered by defendant to plaintiff on or prior to April 10, 1920, and April 10, 1921, respectively, *under said ordinance,* and which sums were refused for the reasons set forth. As it seems to us, the express contract of the defendant under said accepted contract ordinance to pay to the city fifty-five per cent of defendant's divisible net receipts negatives any contract implied in fact to pay the equivalent amount. In 3 Page on Contracts, sec. 1438, it is said: "An express contract measures the rights of the parties, to the exclusion of any implied liability that might have arisen but for such express contract." In *Walker v. Brown,* 28 Ill. 378, 383, it is said: "As in physics, two solid bodies cannot occupy the same space at the same time, so in law and common sense, there cannot be an express and an implied contract for the same thing, existing at the same time. This is an axiomatic truth. It is only when parties do not expressly agree that the law interposes and raises a promise." And we do not think that such facts are alleged in said amended statement as show a contract implied in law to pay said sums. As we read the statement the city's claim is substantially as follows: That the city, having by action of its city council canceled and annulled or attempted to cancel and annul the contract ordinance, was justified in refusing defendant's tender *under the ordinance;* that it is nevertheless entitled to recover the same sums, together with interest, on the theory that they were collected from passengers

on defendant's street cars who paid fares for the purpose of having portions of the fares paid over to the city; and that the sums are moneys had and received by defendant for the use of the city, whereby a contract implied in law to pay said sums to the city is created. We think that the theory that passengers on defendant's cars paid portions of their fares to defendant for the purpose of having the same paid over to the city is somewhat fanciful. The fare which the passenger pays is for the ride, not for the purpose of having a portion of the fare paid over to the city. The fare becomes the money of defendant and no portion is then set aside for the city's use. It is not until the end of the year that the net divisible receipts obtained from fares can be ascertained, when the obligation of defendant to pay the city 55 per cent thereof becomes fixed. And that obligation is by virtue of the contract ordinance. It appears, then, that the city, while averring that said ordinance has been canceled and annulled, at the same time attempts to rely upon that ordinance to make out its claim of a contract implied in law. It is said in 2 Black's Rescission and Cancellation of Contracts, sec. 561, pp. 1321-2: "A person who is in a position where he can either affirm or rescind a contract cannot do both; he cannot treat the contract as rescinded for the purpose of escaping obligations under it, and at the same time treat it as subsisting for the purpose of claiming benefits, or for any reason treat it as abrogated and as existing at the same time." Furthermore, in its said statement of claim, the city assumes that the contract ordinance, because of the action of its city council, as alleged, has been effectively canceled and annulled, yet it appears from the preamble of the ordinance of February 4, 1921, set forth in said statement of claim, that the city "has instituted and *is now prosecuting*" a proceeding in chancery in the circuit court of Cook county to have said contract ordinance canceled and an-

nulled. Whether the contract ordinance has been effectively canceled and annulled is a judicial question, which can only be determined in a direct proceeding (*Attorney General v. Chicago & E. R. Co.*, 112 Ill. 520, 537), and said chancery court, having first acquired jurisdiction of the subject-matter of the controversy as alleged, will retain it to the exclusion of other courts, even of concurrent jurisdiction, which neither can nor will make findings or orders which have any bearing upon the issues in the court originally entertaining the cause. (*Nolan v. Barnes*, 268 Ill. 515, 520.)

In our opinion the municipal court properly struck the city's amended statement of claim from the files, and, upon the city's election to stand by said statement, properly dismissed the present action. The judgment should be affirmed, and it is so ordered.

*Affirmed.*

BARNES, P. J., and FITCH, J., concur.